IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-00659-CMA-KLM

GLOBAL IMAGING ACQUISITIONS GROUP LLC,

 Plaintiff,

v.

AMERISOUND MEDICAL, and
KEVIN EVEN,

 Defendants.

---

**ORDER REJECTING THE DECEMBER 20, 2018 RECOMMENDATION BY UNITED STATES MAGISTRATE JUDGE AND DENYING DEFENDANTS' MOTION TO DISMISS**

---

  This matter is before the Court upon the December 20, 2018 Recommendation by United States Magistrate Judge Kristen Mix, in which she recommends that this Court grant Defendants Amerisound Medical and Kevin Even's (collectively, "Defendants") Motion to Dismiss (Doc. # 20) pursuant to Rule 12(b)(1). (Doc. # 38.) Plaintiff Global Imaging Acquisitions Group objects to Magistrate Judge Mix's Recommendation for two reasons, *see* (Doc. # 39), neither of which is relevant to the Recommendation itself. Nonetheless, for the reasons described herein, the Court rejects the Recommendation and denies Defendants' Motion to Dismiss.

## I. BACKGROUND

The Magistrate Judge's Recommendation (Doc. # 38) provides a recitation of the factual and procedural background of this dispute and is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only what is necessary to address Defendants' Motion to Dismiss.

Plaintiff is a privately-held Wisconsin limited liability company in the business of repairing, refurbishing, and selling used medical imaging equipment. (Doc. # 1 at 1.) On or about April 21, 2014, Plaintiff purchased certain assets of Med Pro Imaging Probe Labs, LLC and Med Pro Imaging, Inc. (collectively, "Med Pro"), including Med Pro's computer databases, files, customer lists, and non-compete agreements. (*Id.*) Plaintiff negotiated an Asset Purchase Agreement with Med Pro's Wisconsin-based receiver ("the Receiver"), who had been appointed by a court because Med Pro had fallen behind in bank loan payments. (Doc. # 20 at 2.) The Asset Purchase Agreement detailed which assets were included in the deal and which were excluded. (*Id.*); *see* (Doc. # 20-2.) Relevant here, the Asset Purchase Agreement, Schedule 1, included as "assets to be purchased" "[a]ll intellectual property, technical know-how, systems, processes, software, computer programs, trademarks, trade names, patent rights, copyrights and other similar intangible assets." (Doc. # 20-2 at 7.) However, Schedule 2 of the Asset Purchase Agreement excluded from the sale "[a]ll causes of action in favor of [Med Pro]" and "[a]ll rights the Receivers or the Company may have against third parties with respect to the Excluded Assets." (*Id.* at 8.)

Plaintiff relies on a Filemaker Pro software program and database ("Filemaker"), which it purchased from Med Pro pursuant to the Asset Purchase Agreement, to track customer orders, inventory, the services performed for customers, the status of services, and the charges for the services provided. (Doc. # 1 at 3–4.) The database includes over 15,000 entries of pricing, order, and customer data from Med Pro. (*Id.* at 4.) Plaintiff also uses Filemaker to store and manage its trade secrets, which include confidential, custom, and detailed procedures and processes (e.g., written repair manuals) that Med Pro had created and developed. (*Id.* at 3–4.)

Defendant Amerisound Medical is a Colorado limited liability company also engaged in the business of repairing, refurbishing, and selling used medical imaging equipment. (*Id.* at 2.) Defendant Kevin Even is allegedly an owner, principle, or partner of Defendant Amerisound. (*Id.*) According to the Complaint, Defendant Even was previously employed by Med Pro in Colorado between 2011 and July 2013. (*Id.* at 5.)

Plaintiff alleges that, prior to Defendant Even's termination from Med Pro in July 2013, Defendant Even tampered with Med Pro's computer system and software and illegally downloaded Med Pro's Filemaker data. (*Id.* at 5–6.) It asserts that Defendants conspired to steal Med Pro's trade secrets and to sabotage the business's ability to conduct its operations "for the benefit of [a] new competing company," Defendant Amerisound. (*Id.* at 6–7.) Plaintiff also alleges that "continuing after [its] purchase of [Med Pro's] assets in or about April 2014," Defendants have "tampered with" Plaintiff's own "IT systems" and have "download[ed], cop[ied], and/or remov[ed] from [Plaintiff's] system [Plaintiff's] extensive Filemaker database." (*Id.* at 6, 12.)

Plaintiff initiated this action on March 20, 2018, and asserts six claims for relief against Defendants: (1) misappropriation of trade secrets under the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101, *et seq*.; (2) misappropriation of trade secrets under 18 U.S.C § 1836(B); (3) misappropriation of trade secrets under the Wisconsin Trade Secrets Act, Wis. Stat. § 134.90; (4) violation of the Computer Fraud and Abuse Act, 18 U.S.C § 1030; (5) conversion and theft pursuant to Colorado and Wisconsin law; and (6) conspiracy to cause injury to business pursuant to Wisconsin law. (*Id.* at 8–12.)

Defendants jointly filed the Motion to Dismiss on May 4, 2018, and requests relief pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. # 20.) Defendants assert that Plaintiff lacks standing for two reasons. (*Id*.) First, Plaintiff has not asserted claims based on its own legal rights and interests and cannot not satisfy the requirements of the prudential standing doctrine. (*Id.* at 8–9.) Second, Plaintiff has not asserted an injury in fact and therefore fails to satisfy the constitutional test for standing. (*Id.* at 9–10.)

Plaintiff responded to Defendant's Motion to Dismiss on June 8, 2018. (Doc. # 30.) It cites law regarding the legal standard for dismissal pursuant to Rule 12(b)(6). (*Id.* at 2–4.) Plaintiff then asserts that Defendants' Motion to Dismiss is improper because Plaintiff's claims had not accrued at the time of Defendant Even's departure from Med Pro. (*Id.* at 4–10.)

Defendants replied in support of their Motion to Dismiss on June 29, 2018. (Doc. # 37.) Defendants state that Plaintiff is attempting to assert a third party's legal rights

and interests—that is, Med Pro's legal rights and interests—and that Plaintiff is not the party that suffered the alleged injuries. (*Id.* at 4–7.) Defendants also argue that the date Plaintiff discovered the claims does not implicate standing. (*Id.* at 7–8.) Finally, Defendants contend that Plaintiff's "as is" purchase of Med Pro's intellectual property, coupled with the Asset Purchase Agreement's express language, did not confer any standing. (*Id.* at 8–9); *see* (Doc. # 20-3.)

Magistrate Judge Mix issued her Report and Recommendation on December 20, 2018, recommending that this Court grant Defendants' Motion to Dismiss. (Doc. # 38.) She concluded that Plaintiff lacks prudential standing because it has not asserted claims based on its own legal rights and interests. (*Id.* at 13.) Out of an abundance of caution, Magistrate Judge Mix also considered constitutional standing and determined that Plaintiff has failed to demonstrate an injury in fact sufficient to establish constitutional standing. (*Id.* at 16.)

Plaintiff filed its Objection to the Recommendation on December 20, 2018. (Doc. # 39.) Defendants responded to the Objection on January 15, 2018. (Doc. # 42.)

## II. APPLICABLE LEGAL PRINCIPLES

### A. REVIEWING AN OBJECTION TO A MAGISTRATE JUDGE'S RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d

1057, 1059 (10th Cir.1996).  In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).  Arguments raised for the first time in objections are deemed waived and need not be considered by this Court.  *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

B.   **DISMISSAL FOR LACK OF STANDING UNDER RULE 12(B)(1)**

Dismissal pursuant to Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint.  "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*24, 518 F.3d 1186, 1189 (10th Cir. 2008).  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)); *see Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).  When reviewing a facial attack, a court takes the allegations in the complaint as true, but when in reviewing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).  Defendants' Motion to Dismiss

launches a factual attack on this Court's subject matter jurisdiction and requests that "the Court make its own factual findings." (Doc. # 20 at 5.)

**C.    STANDING**

Standing "is a threshold issue in every case before a federal court" because "the standing issue implicates a federal court's subject matter jurisdiction." *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 851 (10th Cir. 2015) (quoting Turner v. McGee, 681 F.3d 1215, 1218 (10th Cir. 2012)). "The Supreme Court's 'standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, . . . and prudential standing which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *The Wilderness Soc'y v. Kane Cty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 541 U.S. 1, 11 (2004), *abrogated on other grounds*, *Lexmark Int'l, Inc., v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Because Defendants begin with the prudential standing doctrine, so too does the Court.

1.    <u>Requirements of the prudential standing doctrine</u>

The prudential standing doctrine "encompasses various limitations, including 'the general prohibition on a litigant's raising another person's legal interests.'" *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds*, *Lexmark Int'l, Inc.*, 572 U.S. at 118). A plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

7

## 2. Constitutional requirements for standing

Article III of the United States Constitution restricts the federal courts to the adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The standing inquiry ensures that a plaintiff has a sufficient personal stake in the dispute to ensure the existence of a live case or controversy that renders judicial resolution appropriate. *See Allen v. Wright*, 468 U.S. 737, 750–51 (1984). To establish Article III standing, a plaintiff must show that: (1) he has suffered an "injury in fact"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000). Defendants contends that Plaintiff cannot satisfy the first element of standing—injury in fact. *See* (Doc. # 20 at 9–10.)

To establish injury in fact, a plaintiff is required to show an injury that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). The plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 107 n.8 (1983). A threatened injury must be "certainly impending" or "likely"—not merely speculative. *See Tandy*, 380 F.3d at 1283; *see also Clinton v. City of New York*, 524 U.S. 417, 433 (1998). While general factual allegations of injury may suffice, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), conclusory allegations are insufficient; the plaintiff

"must adequately allege a plausible claim of injury," COPE v. Kan. State Bd. of Educ., 821 F.3d 1215, 1221 (10th Cir. 2016).

## III. DISCUSSION

At the outset, the Court observes that in responding to Defendants' Motion to Dismiss, filed pursuant to Rule 12(b)(1) for lack of standing, Plaintiff relies on and cites to the legal standard for a motion to dismiss brought pursuant Rule 12(b)(6). (Doc. # 39 at 1–3.) That legal standard is inapplicable to Defendants' Motion to Dismiss. *See* (Doc. # 20.) Nonetheless, upon *de novo* review, this Court is satisfied that Plaintiff has standing to assert claims against Defendants and, therefore, denies Defendants' Motion to Dismiss.

Defendants assert that Plaintiff does not have standing because it "fail[s] the prudential requirement that Plaintiff assert its own legal rights and interests, as well as the constitutional requirement of an injury in fact to Plaintiff." (Doc. # 20 at 6.) They posit that Plaintiff is instead "attempting to bring claims that belong to third parties"—Med Pro—"on claims that were long ago abandoned by the receiver of [Med Pro.]" (*Id.* at 6, 8.) Defendants also contend that "there is no injury to Plaintiff, which did not even exist in July 2013, when [Defendants] allegedly engaged in wrongful conduct." (*Id.* at 9.) According to Defendants, "Plaintiff does not allege any claim that accrued after July 2013." (*Id.* at 10.) They reason that Plaintiff, therefore, "has failed to plausibly assert standing." (*Id.*)

The Court denies Defendants' Motion to Dismiss. Plaintiff alleges that it has sustained injuries both after July 2013, when Defendant Even allegedly downloaded

Med Pro's software for his own use, and after April 2014, when Plaintiff acquired Med Pro's assets. As the Court recounted above, Plaintiff alleges that "[b]efore and **continuing after [Plaintiff's] purchase of [Med Pro's] assets in or about April 2014**, Defendants Even and Amerisound . . . acted as co-conspirators in jointly hatching and implementing a plan to not only steal [Med Pro's], and later, [**Plaintiff's] trade secrets** for economic gain [and to] intentionally sabotage and otherwise hobble [Med Pro's and **Plaintiff's] ability to conduct their operations**." (Doc. # 1 at 6) (emphasis added). And in each of the claims for relief, Plaintiff asserts that Defendants accessed without authorization and misused Plaintiff's property—not just Med Pro's property. (*Id.* at 8–12.) For example, in Count VI, Conspiracy to Cause Injury to Business, Plaintiff alleges that Defendants "willfully or maliciously injur[ed] [Plaintiff] in its reputation, trade, and business by . . . downloading, copying, and/or removing **from [Plaintiff's] system [Plaintiff's]** extensive Filemaker database." (*Id.* at 12) (emphasis added). Thus, Defendants' characterization of the Complaint as concerning only Med Pro's property and conduct before Plaintiff acquired Med Pro's assets in April 2014 is flatly contradicted by the text of the Complaint itself. Plaintiff has adequately alleged injury to its own property as a result of Defendants' continuing conduct. That the Asset Purchase Agreement excludes "[a]ll causes of action in favor of [Med Pro]" from Plaintiff's acquisition of Med Pro, *see* (Doc. # 20-2 at 8), is irrelevant to the harms Defendants have allegedly continued to inflict upon Plaintiff since the acquisition.

Accordingly, the Court is satisfied that Plaintiff has plausibly pled causes of action based on its own legal rights and interests for purposes of the prudential standing

doctrine and has plausibly pled an injury in fact for purposes of the constitutional requirements for standing. Plaintiff has standing to assert its claims against Defendants.

The Court rejects the Magistrate Judge's Recommendation for the same reasons it denies Defendants' Motion to Dismiss.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court REJECTS the December 20, 2018 Recommendation of Magistrate Judge Mix (Doc. # 38). It is

FURTHER ORDERED that Defendants' Motion to Dismiss for Lack of Standing (Doc. # 20) is DENIED.

DATED: March 15, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge